682 So.2d 551 (1996)
Gordon LOZIER, Appellant,
v.
COLLIER COUNTY, Florida, Appellee.
No. 87609.
Supreme Court of Florida.
November 7, 1996.
Robert C. Gebhardt of Gebhardt & Miller, Naples, for Appellant.
Gregory T. Stewart and Maureen McCarthy Daughton of Nabors, Giblin & Nickerson, P.A., Tallahassee; and David C. Weigel, Collier County Attorney and David E. Bryant, Assistant County Attorney, Naples, for Appellee.
George L. Varnadoe and Andrew I. Solis of Young, Van Assenderp & Varnadoe, P.A., Naples; and Edward K. Cheffy of Cheffy, Passidomo, Wilson & Johnson, Naples, for Marco Association of Condominiums, Inc., amicus curiae.
GRIMES, Justice.
We review a final judgment validating a revenue note Collier County proposes to issue. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
In June of 1988, Collier County created the Marco Island Beachfront Renourishment Facilities Municipal Service Taxing Unit (the "Marco MSTU") pursuant to chapter 125, Florida Statutes (1987). Collier County, Fla., Ordinance No. 88-59 (June 14, 1988). The Marco MSTU was created to provide a means of financing beach renourishment and erosion control at Marco Island Beach through the assessment of an ad valorem tax. Ordinance 88-59 provided an annual ad valorem tax, not exceeding one and one-half mills, on all the taxable property within the boundary of the Marco MSTU. In November of 1988, the electorate approved by referendum election the issuance of bonds to finance renourishment and protection of certain beachfront locations within the Marco MSTU and the pledge of ad valorem tax as a revenue source for the bonds. Collier County issued bonds in the aggregate principal amount of $5,000,000 in May of 1989 designated "Series 1989 Bonds," secured by and payable from the ad valorem tax collected pursuant to Ordinance 88-59.
In 1992, Collier County adopted Ordinance 92-60, which provided for enactment of a tourist development plan and collection of a 2% tourist development tax. Ordinance 92-60 was approved by voters of the county in a referendum vote. In 1995, this ordinance was amended to include the levy and collection of an additional 1% tourist development tax. Collier County then sought to borrow money from the Florida Local Government Finance Commission for the purpose of liquidating and refunding its Series 1989 Bonds.[1] *552 Approximately $2,755,000 of the aggregate principal amount of the bonds currently remains outstanding. Collier County elected to pledge 50% of the first 3% of tourist development tax received to pay for the loan, designated Loan Number A-6-1.
A complaint for validation of the note underlying the loan, designated Collier County Revenue Note, Draw No. A-6-1, was filed by Collier County, and the circuit court entered an order to show cause why the note should not be validated. After proper notice and hearing, the circuit court issued a final judgment validating the issuance of the note. The circuit court held that Collier County was authorized to issue the note for the purpose of securing the loan from the Finance Commission and to use the proceeds from the loan to refund its Series 1989 Bonds. The circuit court also affirmed Collier County's authority to use its tourist development tax revenues to repay the loan. Gordon Lozier, a resident of Collier County, timely filed an appeal with this Court.[2] Marco Association of Condominiums, a nonprofit corporation comprised of fifty-six condominium associations located on Marco Island, Florida, was granted leave by this Court to appear as amicus curiae.
Lozier asserts that Collier County's intended use of the loan proceedsto refund the Series 1989 Bondsis altogether unrelated to beach improvement, maintenance, renourishment, restoration, and erosion control and is therefore unauthorized. Lozier further asserts that Collier County may not use tourist development tax proceeds to refund its Series 1989 Bond because section 125.0104(5)(c), Florida Statutes (1995), only allows tourist development tax proceeds to be used to refund revenue bonds and the Series 1989 Bonds are not revenue bonds.
This Court has consistently held the scope of our inquiry in bond validation proceedings is limited to the following considerations: "1) determining if the public body has the authority to issue the bonds; 2) determining if the purpose of the obligation is legal; and 3) ensuring that the bond issuance complies with the requirements of law." Rowe v. St. Johns County, 668 So.2d 196, 198 (Fla.1996).[3]
Section 125.0104, Florida Statutes (1995), governs the levying and use of tourist development taxes. Under section 125.0104(5)(a), the use of tourist development tax proceeds is restricted to certain purposes, including the financing of beach improvement, maintenance, renourishment, restoration, and erosion control. Section 125.0104(5)(c), addresses the pledge of tourist tax revenues for a loan to refund previously issued bonds. This provision reads as follows:
The revenues to be derived from the tourist development tax may be pledged to secure and liquidate revenue bonds issued by the county for the purposes set forth in subparagraphs (a)1. and 4. or for the purpose of refunding bonds previously issued for such purposes, or both; however, no more than 50 percent of the revenues from the tourist development tax may be pledged to secure and liquidate revenue bonds or revenue refunding bonds issued for the purposes set forth in subparagraph (a)4. Such revenue bonds and revenue refunding bonds may be authorized and issued in such principal amounts, with such interest rates and maturity dates, and subject to such other terms, conditions, and covenants as the governing board of the county shall provide. The Legislature intends that this paragraph shall be full and complete authority for accomplishing such purposes, but such authority shall be supplemental and additional to, and not in derogation of, any powers now existing or later conferred under law.
§ 125.0104(5)(c), Fla. Stat. (1995) (emphasis supplied).
Lozier argues that pursuant to the language in this section Collier County may only use tourist tax revenues to refund previously *553 issued revenue bonds. Collier County, on the other hand, takes the position that this section does not place a limit on the type of bonds that can be refunded with tourist development tax proceeds and that there is nothing in the section that prohibits them from using the tax proceeds to refund the Series 1989 Bonds.
While section 125.0104 is not a model of clarity, the language emphasized above does authorize the revenues from the tourist development tax to be pledged for the purpose of refunding bonds previously issued for beach renourishment and erosion control.[4] The fact that the legislature referred to the refunding of "bonds" rather than employing the term "revenue bonds" as it did in the immediately preceding phrase suggests that it did not intend for the use of tourist development tax proceeds to be limited in the way argued by Lozier. Interpreting this section to allow Collier County to refund a bond that is not a revenue bond does not lead to an unjust, unreasonable, or absurd result or fly in the face of the legislature's intent that tourist development tax proceeds be used to refund bonds issued to finance beach renourishment.
In light of the fact that beach renourishment is not typically a revenue-generating activity, it is unlikely that a county would issue revenue bonds to finance beach renourishment projects. In order for section 125.0104(5)(c), to have meaning in the context of the legislative goal of providing counties with a means of refunding bonds previously issued for beach renourishment, this provision is more logically interpreted to allow the refunding of bonds other than revenue bonds.
Lozier's real complaint seems to be that Collier County ought not to use tourist development taxes, which are designated for beach maintenance and which are assessed county-wide, to pay off bonds which financed beach maintenance already accomplished and for which only taxpayers within the Marco MSTU were assessed. However, the wisdom of such action rests with Collier County, and we know of nothing to prohibit it from doing so.
We hold that Collier County is authorized to refund its Series 1989 Bonds, that its proposed use of tourist development tax proceeds is legal, and that the proposed issuance of the note and the repayment of the Series 1989 Bonds complies with the requirements of the law. We find all of Lozier's other claims to be without merit.
In sum, we find that Collier County acted within its authority and complied with all requirements of the law in the issuance of Note A-6-1, and we affirm the circuit court's final judgment validating the note.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The Florida Local Government Finance Commission ("Finance Commission") is a public body corporate and politic created pursuant to chapter 163, part I, Florida Statutes, that makes loans available to public agencies to provide funding for capital improvements and other governmental needs. The Finance Commission's loans are secured by the public agency's covenant to budget and appropriate legally available non-ad valorem revenues on an annual basis. The participating public agency may additionally pledge a specified revenue for the repayment of a loan used to finance a particular project.
[2] See Rowe v. St. Johns County, 668 So.2d 196 (Fla.1996) (citizens and taxpayers of a county are proper parties to a county's bond validation proceeding and may properly appear for the first time on appeal).
[3] These considerations also apply to validation proceedings for certificates of indebtedness, such as Collier County's Note A-6-1.
[4] Subparagraph (5)(a)(4) reads:

To finance beach improvement, maintenance, renourishment, restoration, and erosion control, including shoreline protection, enhancement, cleanup, or restoration of inland lakes and rivers to which there is public access.